IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| TIMOTHY BO REESE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 316-087 |
| | ) | |
| TIFFANY SAILEM, Lieutenant; TIMMON, | ) | |
| C.E.R.T.; and FOREMAN, C.E.R.T., | ) | |
| | ) | |
| Defendants. | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Plaintiff, an inmate at Rutledge State Prison in Columbus, Georgia, brought this case pursuant to 42 U.S.C. § 1983, concerning events at Johnson State Prison ("JSP") in Wrightsville, Georgia. Plaintiff is proceeding *pro se* and *in forma pauperis*. Before the Court is Defendant's pre-answer motions to dismiss (doc. nos. 36, 51), which the Court **REPORTS** and **RECOMMENDS** be **GRANTED** and this case **DISMISSED** and **CLOSED**.

### I. BACKGROUND

With respect to Sailem, Timmon, and Foreman, the remaining defendants in this action, Plaintiff alleges the following facts.

On March 13, 2016, when Plaintiff was standing in a medical line to receive his insulin injection, Defendant Timmon approached Plaintiff and ordered him to place his hands behind his back. (Id. at 5.) Defendant Timmon then placed handcuffs on Plaintiff in a "forceful and

unorthodox manner," and put him in a holding cell for approximately forty-five minutes. (Id.) Plaintiff was doing nothing wrong, and he did not receive a disciplinary report. (Id.) Upon release from the handcuffs, Plaintiff experienced tingling, numbness, and loss of sensation in his hands and fingers. (Id.) He immediately sought out medical care, but was not seen until eleven months later. (Id.)

On June 28, 2016, while Plaintiff was being escorted to the J-1 segregation lockdown, Defendant Sailem sidetracked him to the I.D. room and placed him in a holding cell. (Id. at 6.) After twenty minutes in the holding cell, Defendant Timmon arrived and told Plaintiff he was going to cut his hair before transporting him to J-1. (Id.) Defendants Timmons and Foreman then grabbed Plaintiff and forced him into the barber chair, mashing his hands between his back and the chair and further injuring them. (Id.)

Plaintiff filed grievance number 215994 on May 21, 2015, alleging on March 13, 2016 at 7:10 a.m. while he was standing in line to receive an insulin injection, Defendant Timmon handcuffed him from behind and placed him in a holding cell for forty-five minutes, causing lack of feeling in his left thumb, index, and middle fingers. (Doc. no. 36-1, Ex. A.) Plaintiff specifically noted he filed the grievance late because he was awaiting copies of a Medical Encounter Form, which he only received on March 24, 2016. (Id.) On April 5, 2016, Warden Emmons evaluated and denied grievance 215994 as filed untimely. (Id.) On April 6, 2016, Plaintiff refused to accept Warden Emmons' response, stating "it wasn't right." (Id.) Plaintiff did not appeal the denial of grievance number 215994. (Doc. no. 51-1, ¶ 15.)

Plaintiff filed grievance number 222146 on July 5, 2017, alleging he was detained by Defendants Sailem, Foreman, and Timmon, who cuffed his hands behind his back, lifted him and forced him into a barber chair, and shaved his head. (Doc. no. 51-7, Ex. 6.) On August 1, 2016, Warden Emmons evaluated and denied grievance 222146 on the ground there was no evidence to support Plaintiff's allegations. (Id.) On November 10, 2016, Plaintiff received the Central Office's denial of his appeal. (Id.)

## II. DEFENDANT'S MOTION TO DISMISS SHOULD BE GRANTED BECAUSE PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

### A. The Legal Framework

Where, as here, Defendants have filed a motion to dismiss based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the Court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, Defendant's motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, 555 U.S. 1074 (2008)). If the complaint is not subject to dismissal at the first step, then at step two the Court makes specific findings to resolve the disputed factual issues, with Defendant bearing the burden of proving Plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the Court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not

an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative

4

process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).[1] Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

### B. The Administrative Grievance Procedure

Based on the dates of the alleged incidents, the administrative grievance procedure applicable in this case is governed by the version of the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001, which became effective on July 20, 2015. (See doc. no. 36-3, Ex. C.) The administrative remedies procedure commences with the filing of a grievance with the inmate's counselor. SOP IIB05-0001 § VI(D)(1)-(3). The inmate's counselor forwards the grievance to the grievance coordinator, who must screen the grievance to determine whether to accept it or recommend the Warden reject it. Id. § VI(D)(3), (5)(a). The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § VI(D)(4). The timeliness requirements of the administrative process may be waived upon a

---

[1]Other federal circuits have similarly held the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001); Lee v. Lappin, No. 04-5008, 2004 WL 1701045 (D.C. Cir. July 29, 2004); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 538 (7th Cir. 1999).

showing of good cause. See id. § VI(D)(5)(b)(2). Should the grievance coordinator recommend rejection, the SOP requires the Warden give a response to the inmate's counselor to deliver to the inmate within forty calendar days of its original receipt; a onetime ten calendar day extension may be granted. Id. § VI(D)(7).

If the inmate is not satisfied with the Warden's response to the grievance, he has seven calendar days from the receipt of the response to file an appeal to the Central Office of the Commissioner; the Office of the Commissioner or his designee has one hundred calendar days after receipt of the grievance appeal to respond. Id. § VI(E)(2), (7). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office or the expiration of the one hundred day time period. See id. § VI(E).

### C. Plaintiff's Failure to Exhaust

Plaintiff's claims should be dismissed because he failed to properly exhaust his administrative remedies as to grievances 215994 and 222146 and filed no other grievances regarding his remaining claims.

#### 1. Grievance 215994

Plaintiff failed to exhaust the administrative grievance process as to grievance 215994 because he filed the grievance outside the ten-day time frame listed in SOP IIB05-0001 § VI(D)(4). (Doc. no. 36-1, Ex. A); Johnson, 418 F.3d at 1159 ("[A]n untimely grievance does not satisfy the exhaustion requirement of the PLRA."). As the Eleventh Circuit explained,

> Importantly, we note that [Plaintiff]'s untimely administrative grievance in this case does not comport with the intent of Congress that prison officials have an

> opportunity to address the grievance internally and rule on the grievance before the inmate files a complaint in federal court. This is especially so in this case because [Plaintiff] did not request leave to file an untimely administrative grievance and did not assert good cause for his failure to file a timely grievance before he filed his federal complaint. Moreover, none of the aims of § 1997e(a) has been achieved here because prison officials did not review the merits of [Plaintiff]'s complaint—his grievance did not spur the corrective action that might have obviated the need for litigation, there was no filtering of potential frivolous claims, and no development of an administrative record to assist the courts in deciding the controversy. Allowing [Plaintiff]'s untimely grievance to meet the exhaustion requirement would run counter to the understanding that § 1997e(a) requires prisoners to invoke and fully exhaust all available administrative grievance processes.

Johnson, 418 F.3d at 1158-59 (internal citations omitted).

Here, Plaintiff argues he established "good cause" for filing grievance 215994 out of time by noting in his grievance he was awaiting medical encounter form copies. (See doc. no. 36-1, Ex. A, p. 2; doc. no. 60, p. 2.) The SOP defines "good cause" as follows:

> A legitimate reason involving unusual circumstances that prevented the offender from timely filing a grievance or an appeal. Examples include: serious illness, being housed away from a facility covered by this procedure (such as being out on a court production order or for medical treatment).

See SOP IIB05-0001 § IV(C). Plaintiff awaiting certain medical form copies was not an unusual circumstance. It did not involve serious illness, absence from JSP, or any other circumstance preventing him from filing a grievance. Indeed, Plaintiff was not required to include the medical encounter forms to properly grieve the incident. See id. § VI (D)(1)-(3). Thus, Plaintiff cannot establish good cause to excuse his untimeliness.

Furthermore, contrary to Plaintiff's contention, prison officials did not deviate from SOP IIB05-0001 § VI(B)(8)(a) in processing grievance 215994. While Plaintiff is correct that "grievance[s] involving sexual assault or physical force involving non-compliance with

Department policies . . . are automatically forwarded . . . to Internal Investigation Unit. . .," see id. § VI(B)(8)(a), such grievances are still subject to the ten-calendar-day timeliness requirement. See id. § VI(D)(4); 28 C.F.R. § 115.52(b)(1) ("The agency may apply otherwise-applicable time limits to any portion of a grievance that does not allege an incident of sexual abuse."). Therefore, because grievance 215994 was not filed within the applicable ten-day period, prison officials were not required to automatically forward the untimely grievance to Internal Investigations. Moreover, it is within a Warden's discretion to determine whether a grievance implicates the use of "physical force involving non-compliance with Department policies." See id. § VI(B)(8)(a) ("At any time before the Warden's Grievance decision is delivered to the offender, the Warden *may* refer the matter to the Internal Investigation Unit.") (emphasis added). Thus, prison officials did not deviate from the SOP in processing grievance 215994.

As Plaintiff failed to file grievance 215994 within the ten-day administrative time frame, it does not satisfy the exhaustion requirement. Woodford, 548 U.S. at 90; Johnson, 418 F.3d at 1159.

### 2. Grievance 222146

Plaintiff signed the original complaint initiating the present lawsuit on October 24, 2016, several weeks before he received a response from the Central Office regarding his appeal of grievance 222146 on November 10, 2016. (See doc. no. 1, p. 6; doc. no. 49-5, Attch. 3, pp. 57-98.) The Eleventh Circuit requires prisoners to complete the administrative process before initiating suit. Poole, 312 F. App'x at 166; see also Higginbottom, 223 F.3d at 1261. The grievance process is not complete until after an inmate receives a response to

his grievance appeal or until the time period in which the Commissioner has to respond expires. See SOP IIB05-0001 § VI(E). Therefore, because he filed suit before completing the administrative process, grievance 222146 fails to exhaust Plaintiff's claims. Poole, 312 F. App'x at 166; Higginbottom, 223 F.3d at 1261.8

Accordingly, Plaintiff's claim is procedurally defaulted, Johnson, 418 F.3d at 1159, and Defendant's motion to dismiss should be granted.

### D. Plaintiff's Motions Are Moot.

Because Plaintiff's case is ripe for dismissal, his Motion for Reconsideration, Motion Showing Violation of Statewide Grievance Procedure, and Motion to Pursue Discovery are **MOOT**. (Doc. nos. 59, 60, 61.)

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motions to dismiss be **GRANTED** (doc. nos. 36, 51), Plaintiff's Motion for Reconsideration (doc. no. 59), Motion Showing Violation of Statewide Grievance Procedure (doc. no. 60), and Motion to Pursue Discovery (doc. no. 61) be **DENIED AS MOOT**, and this case **DISMISSED** and **CLOSED**.

SO REPORTED and RECOMMENDED this 17th day of January, 2018, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

9